# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
### ROANOKE DIVISION

**DENIS A. RIVERA,** )
)
Plaintiff, ) Case No. 7:15CV00205
)
v. ) **OPINION**
)
**VA. D.O.C. HEALTH SERVICE** ) By: James P. Jones
**DIRECTOR, ET AL.,** ) United States District Judge
)
Defendants. )

*Denis A. Rivera, Pro Se Plaintiff; Margaret Hoehl O'Shea, Office of the Attorney General, Richmond, Virginia, for Defendants Schilling, Clarke, and Mathena; Carlene Booth Johnson, Perry Law Firm, Dillwyn, Virginia, for Defendants Miller, Yates, and Deel.*

Denis A. Rivera, a Virginia inmate proceeding pro se, filed this civil rights action under 42 U.S.C. § 1983. Liberally construed, Rivera's Complaint alleges that he received inadequate medical treatment for a persistent fungal infection and headaches, in violation of his constitutional rights. After review of the record, I conclude that the defendants' motions to dismiss must be granted.

## I.

Rivera's claims arise from the course of his medical treatment at Red Onion State Prison ("Red Onion"), a prison facility operated by the Virginia Department of Corrections ("VDOC"). Rivera alleges that on March 5, 2013, Dr. Miller

examined him for complaints about having suffered "headaches (brain pain/memory loss) after [he] had been beaten by guards months before" and about "the fungal infection on/in his body." (Compl. 6, ECF No. 1.) During the appointment, Rivera allegedly "repe[a]tedly complain[ed]" to the doctor that the "Tolnafate 1% cream" ordered for Rivera's skin condition on January 29, 2013, was "not helping . . . at all and the infection was spreading and it was leaving scars on [his] body (mostly legs)." (*Id.*) Rivera allegedly told Dr. Miller that a previous doctor had prescribed "lotrisone cream and solenium sulfide lotion," and that he needed "an antifungal lotion (medication) that would make the infection go away and medication for the scars." (*Id.*) Dr. Miller allegedly told Rivera that he was "a prisoner in D.O.C. and that D.O.C. doesn't care[] about any scars that are left on Plaintiff's body." (*Id.* 6-7.)

Rivera filed an informal complaint form on March 7, 2013, reciting the conversation that he had allegedly had with Dr. Miller on March 5.[1] Nurse Yates responded in writing on March 15: "You are scheduled for sick call for re-evaluation." (*Id.* Ex. 1, at 1, ECF No. 1-1.) On March 21, 2013, Rivera filed a

---

[1] I note that an informal complaint form is the first action an inmate must take to pursue a grievance under Operating Procedure ("OP") 866.1, the established administrative remedies procedure for inmates in VDOC facilities. If unsatisfied with the response to the informal complaint, the inmate may then file a regular grievance and receive a Level I response, usually from the warden. If the inmate is still dissatisfied, he may then appeal to a regional administrator for a Level II response.

regular grievance, repeating the allegations from his informal complaint and stating: "At this time I haven't been re-evaluated." (*Id.* at 2.) Investigating the grievance on April 4, Nurse Yates came to Rivera's cell and looked through the window in his door, while he allegedly "showed [her] that the fungal infection was getting worse and the scars that were being left. . . ." (Compl. 7.) Yates allegedly told Rivera that if he would withdraw the grievance, she would put him on the list to see the doctor; Rivera did not withdraw the grievance, and was allegedly not added to the list to see the doctor.

In answer to Rivera's regular grievance, Warden Mathena's Level I response, dated April 15, 2013, stated, in pertinent part:

> You stated you saw Dr. Miller concerning "brain damage" and a fungal infection on your body around March 5, 2013. Dr. Miller remarked that you are in prison, and the [DOC] does not care about the scars that are left on your body when you told him you needed an antifungal lotion that would make the infection go away. The response to your informal complaint stated that you would be re-evaluated but this has not been done.
>
> **Informal Summary**: Your informal complaint responded to by Nurse L. Yates on March 15, 2013 stated . . . You are scheduled for sick call for re-evaluation.
>
> A face-to-face meeting was conducted for this grievance by Nurse L. Yates on April 4, 2013.
>
> **Investigation**: The nurse failed to schedule you for the re-evaluation, therefore your grievance is founded. This was an oversight. R. Deel, RNCA stated that you will be seen today (March 8, 2013). We apologize for any inconvenience this delay has caused you.

. . . .

> This grievance is **FOUNDED** as there has [sic] incorrectly applied procedure of this policy. In the future correct procedure will be followed by ensuring the offender's name is added to the list if he is to be seen again. As noted above, you will be re-evaluated today

(*Id.* Ex. 1, at 3.)

On April 17, 2013, Rivera appealed the Level I response to the next tier of review under the VDOC's grievance procedures, complaining about these VDOC employees' negligence. The Level II response from the Health Services Director Fred Schilling was dated May 7, 2013, and stated, in pertinent part:

> I concur with the Level I response and have determined your grievance UNFOUNDED. It is reported that your level I grievance was determined to be founded because the nurse did not schedule your re-evaluation. You state in your appeal that you still have not been seen by Dr. Miller, the ROSP physician. However, it is reported by Nurse Deel that you were seen by Dr. Miller on 03/08/13. Therefore, you level II appeal is determined to be unfounded.

(*Id.*, at 5.) Schilling's response also stated, "Level II is the last level of appeal for this complaint. All administrative remedies have been exhausted regarding this issue." (*Id.*)

Rivera filed this § 1983 action, suing Dr. Miller, Nurses Yates and Deel, the administrators who addressed his grievances, and VDOC Director Harold Clarke, for not properly training his employees. He denies that he was seen by Dr. Miller on March 8, 2013, accuses Deel of lying about that visit, and complains that no one properly investigated his grievance or appeal or Deel's lie would have been

-4-

uncovered. Rivera also alleges that as a result of the defendants' failure to treat his fungal infection and headaches, he has suffered: permanent body scars (on the legs); ongoing insomnia, nightmares, and loss of appetite; emotional/mental deterioration; and ongoing extreme migraine headaches. (Compl. 10-11.)

In his Complaint, Rivera asserts the following claims: deliberate indifference (inadequate medical treatment), cruel and unusual punishment,[2] conspiracy, and retaliation, and state law claims of alleged negligence, intentional infliction of emotional distress, and abuse of process. (*Id.* 2.) As relief, he seeks monetary damages and injunctive relief to have the defendants fired or better trained. The defendants have filed motions to dismiss, arguing that Rivera's claims are time barred under the applicable statutes of limitations and that they are also without merit. Rivera has responded to the defendants' motions, making them ripe for disposition.

## II.

### A. Standard of Review

A motion to dismiss tests the legal sufficiency of a complaint. *See, e.g., Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 553-63 (2007). "[T]he complaint must be

---

[2] As the defendants have noted, these first two claims in Rivera's Complaint are one and the same — an allegation that the defendants acted with deliberate indifference to a serious medical need, in violation of Rivera's rights under the Eighth Amendment's prohibition of cruel and unusual punishment to convicted prisoners. *See Estelle v. Gamble*, 429 U.S. 97, 104 (1976).

dismissed if it does not allege 'enough facts to state a claim to relief that is plausible on its face.'" *Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008) (internal citation omitted). However, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555, 557). "A claim has facial plausibility" and survives a 12(b)(6) motion only "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

### B. Statute of Limitations.

#### 1. State Law Claims.

Section 8.01-243.2 of the Code of Virginia provides that a person confined in a state or local correctional facility wishing to sue about the conditions of his confinement has "one year after cause of action accrues or within six months after all administrative remedies are exhausted, whichever occurs later" to file his lawsuit. "[T]he medical care a prisoner receives is just as much a 'condition' of his confinement as the food he is fed, the clothes he is issued, the temperature he is subjected to in his cell, and the protection he is afforded against other inmates." *Patten v. Nichols*, 274 F.3d 829, 838 (4th Cir. 2001). "[A] cause of action for

personal injury related to conditions of confinement in a state or local correctional facility accrues on, and the statute of limitations period [under § 8.01-243.2] begins to run from, the date the injury is sustained." *Lucas v. Woody*, 756 S.E.2d 447, 450 (2014).

Rivera's claims of abuse of process, negligence, and intentional infliction of emotional distress arise, if at all, under state law. These state law claims are based on the defendants' actions or omissions that allegedly denied him timely medical evaluation and appropriate treatment for his "fungal infection" and headaches. All of the defendants' actions described in the Complaint occurred on or before May 7, 2013, the date of Schilling's Level II response to Rivera's grievance appeal. On that same date, Rivera completed exhaustion of his administrative remedies and knew of each defendant's alleged violations of his state law rights. Even allowing him the more generous one-year filing period under section 8.01-243.2, he only had until May 7, 2014, to file any claims under state law related to those alleged violations. Rivera filed this lawsuit, at the earliest,[3] on April 21, 2015, well outside his filing window under § 8.01-243.2. Accordingly, Rivera's state law

---

[3] A pleading filed by an incarcerated person is deemed filed when the prisoner delivers it pleading to prison officials for mailing. *Lewis v. Richmond City Police Dep't*, 947 F.2d 733, 735 (4th Cir. 1991). For purposes of this Opinion, I will presume that Rivera delivered his Complaint to prison officials for mailing to the court on the same day that he signed and dated it, which was April 21, 2015.

claims are time barred, and I will grant the Motions to Dismiss on that ground as to all such claims.

## 2. Section 1983 Claims.

Under 42 U.S.C. § 1983, an aggrieved party may file a civil action against a person for actions taken under color of state law that violate his federal constitutional rights. *See Cooper v. Sheehan*, 735 F.3d 153, 158 (4th Cir. 2013). Because Congress did not include time limits in the statute for filing a § 1983 action, such cases are uniformly governed by the statute of limitations applicable to general personal injury actions in the state where the tort allegedly occurred. *See Owens v. Okure*, 488 U.S. 235, 239, 250 (1989). Under Virginia law, a general personal injury action must be commenced within two years from the date on which the claim accrues. *See* Va. Code Ann. § 8.01-243(A). This two-year limitation statute also applies to prisoner's § 1983 claims concerning conditions of confinement. *See Shelton v. Angelone*, 148 F. Supp. 2d 670, 677 (W.D. Va. 2001) ("Clearly, a prisoner's claims . . . that prison conditions, including . . . denial of medical treatment, violate his constitutional rights are analogous to the type of personal injury claims under Virginia law to which § 8.01-243.2 applies"), *aff'd*, 49 F. App'x 451 (4th Cir. 2002) (unpublished) (rejecting claim that one-year limitation in Va. Code §8.01-234(A) applies to prisoner civil actions under §1983), *cert. denied*, 538 U.S. 964 (2003). It is well established that a § 1983 claim

accrues "when the plaintiff possesses sufficient facts about the harm done to him that reasonable inquiry will reveal his cause of action." *Nasim v. Warden, Md. House of Corr.*, 64 F.3d 951, 955 (4th Cir. 1995) (en banc).

As stated, Rivera's constitutional claims against the defendants allege denial of medical treatment, conspiracy, and retaliation. Actionable § 1983 claims under these legal theories require different showings. Officials violate an inmate's rights regarding medical care only when they act with deliberate indifference to a serious medical need. *Estelle*, 429 U.S. at 104. A § 1983 claim of conspiracy requires facts showing that the alleged co-conspirators shared "a unity of purpose or a common design" to deprive the plaintiff of constitutional rights. *Murdaugh Volkswagon, Inc. v. First Nat'l Bank of S.C.*, 639 F.2d 1073, 1076 (4th Cir. 1981) (quoting *Am. Tobacco Co. v. United States*, 328 U.S. 781, 810 (1946)). A § 1983 retaliation claim requires facts showing the defendant took the challenged act against the prisoner with "intent to retaliate" for the prisoner's exercise of a "specific constitutional right" and the act chilled the prisoner's constitutional exercise. *Moore v. Bennett*, 777 F. Supp. 2d 969, 982 (E.D.N.C.), *aff'd sub nom. Moore v. Bennette*, 446 F. App'x 579 (4th Cir. 2011) (unpublished).

Rivera filed the Complaint commencing this action on April 21, 2015. Thus, for Rivera's § 1983 claims to be timely filed under § 8.01-243(A), those claims must have accrued after April 21, 2013. I conclude that Rivera's claims against

Dr. Miller, Nurse Yates, Nurse Deel, and Warden Mathena had all accrued by April 17, 2013, when Rivera filed his appeal of the Level I response to his grievance. Under the constitutional standards described for § 1983 claims of conspiracy, retaliation, and inadequate medical care, Rivera fails to show any fact necessary to such constitutional claims that was not known to him on April 17, 2013. Because Rivera waited to file his § 1983 action more than two years after his claims against these defendants accrued, those claims are time barred under § 8.01-243(A). Rivera fails to invoke any basis for tolling of the limitation period under this statute.[4] Therefore, I will grant the motions to dismiss on that ground as to Rivera's § 1983 claims against Dr. Miller, Nurse Yates, Nurse Deel, and Warden Mathena.

Rivera's claim against Schilling is arguably not time barred, because Schilling's challenged action in issuing the Level II response on May 7, 2013, occurred within the two-year statutory period before Rivera filed the Complaint. I will, nevertheless, grant Schilling's Motion to Dismiss for another reason: Rivera's Complaint fails to state any actionable § 1983 claim.

---

[4] When a state's limitations period is to be applied in a § 1983 action, the state's tolling rules apply. *Bd. of Regents v. Tomanio*, 446 U.S. 478, 484 (1980). Section 8.01-243(A) itself does not set a different timeline to bring suit after the exhaustion of administrative remedies. Virginia law recognizes certain circumstances that toll the running of a statute of limitations, but the time required for exhaustion of administrative remedies is not listed among these circumstances. Va. Code Ann. § 8.01-229.

Liberally construed, Rivera's allegations are that Schilling conspired with the other defendants to avoid recognizing that Dr. Miller failed to prescribe the desired medications and Nurse Yates failed to schedule Rivera for reevaluation as promised, all in retaliation against Rivera. Cooper's factual allegations do not state an actionable § 1983 claim under any of these legal standards.

Rivera's claims of conspiracy and retaliation are merely conclusory assertions with no facts in support. His allegations do not show that the defendants acted with any commonality of purpose in a conspiracy to violate his rights, or that any defendant's actions were motivated by Rivera's exercise of a constitutionally protected right as required for a retaliation claim. *See, e.g., Murdaugh Volkswagon*, 639 F.2d at 1075 (finding that without facts showing that defendants shared common purpose, conclusory allegations of conspiracy based on independent acts of two or more alleged wrongdoers are insufficient to state claim of conspiracy to violate constitutional rights); *Adams v. Rice*, 40 F.3d 72, 74 (4th Cir. 1994) (affirming summary dismissal of conclusory allegations of retaliation as frivolous). Therefore, I will grant Schilling's Motion to Dismiss as to these claims.

Rivera's claim against Schilling for denial or delay of medical care also fails, because Rivera's claims of inadequate medical care by the medical defendants are factually deficient. For an Eighth Amendment claim about medical care, Rivera must show, objectively, that he had a serious medical need for

different treatment than he received, and subjectively, that each defendant knew of a substantial risk of harm that medical need presented and responded unreasonably to it. *Farmer v. Brennan*, 511 U.S. 825, 834-37 (1994). Under the subjective prong of this analysis, "officials evince deliberate indifference by acting intentionally to delay or deny the prisoner access to adequate medical care or by ignoring an inmate's known serious medical needs." *Sharpe v. S. C. Dep't of Corr.*, 621 F. App'x 732, 733 (4th Cir. 2015) (unpublished). This component requires proof of intent beyond mere negligence, errors in judgment, inadvertent oversights, or disagreements about the prisoner's treatment plan. *Jackson v. Lightsey*, 775 F.3d 170, 178 (4th Cir. 2014) (citing *Farmer*, 511 U.S. at 837)).

Rivera's submissions do not support a finding that his skin condition or his purported headaches constituted a serious medical need for different treatment than he received on March 5, 2013. The medical records he submits indicate that he has received medication for these conditions, both before March 5, 2013, and since that date.[5] These records, as well as his complaint, also reflect that skin disruptions and headaches have been a recurring issue for Rivera, treated at different times with different medications.

---

[5] Among Rivera's submissions are medical notes for March 5, 2013, that appear to indicate a prescription for Tylenol for 30 days for Rivera, an order for hydrocortisone cream for his skin condition, and an order for him to be referred "to mental health for memory testing if possible." (Pl.'s Aff. Ex. 4, at 14, ECF No. 28-1.)

Moreover, Rivera does not allege that Dr. Miller denied him treatment for his skin condition or headaches on March 5, 2013. Rather, the doctor simply did not agree to prescribe the different medications that Rivera requested. Such doctor-patient disagreements present, at most, assertions of misdiagnosis or negligence that are not sufficient to show the doctor's deliberate indifference under the Eighth Amendment standard. Thus, Rivera has stated no § 1983 claim against Dr. Miller.

Rivera's claims against the nurses also lack factual support. His contention against these defendants appears to be that they delayed him from receiving the treatment he desired. He alleges that Nurse Yates did not place his name on the sick call schedule on March 15, as promised in the informal complaint response, or on April 4, 2013, after he refused to withdraw his grievance, and that Nurse Deel's "lie" — about a March 8 visit with Dr. Miller that did not happen — prevented him from obtaining the Level II grievance appeal response about his medical care that he wanted. Rivera simply states no facts showing a serious medical need to be placed on sick call review more quickly than he was, or that the nurses knew their actions posed a substantial risk that Rivera was likely to suffer serious harm. Moreover, Rivera's many exhibits include responses to complaint forms and grievance forms, advising Rivera to use the appropriate form (presumably a sick

call request form) when he wanted to be scheduled for sick call as the necessary triage procedure to be scheduled for examination by the doctor.

Rivera apparently attempts to prove that Schilling and the other administrators knew from receipt of his grievances and appeals that the doctor and nurses had delayed the desired treatment of his skin condition and headaches. Because the Complaint states no § 1983 claim against the medical personnel, however, Rivera cannot hold Schilling or any of the other administrative defendants liable under § 1983 for failing to prevent or to correct alleged constitutional violations by their subordinates. *Randall v. Prince George's Cty.,* 302 F.3d 188, 206 (4th Cir. 2002) (holding that claim of supervisory liability requires showing that "there was an affirmative causal link between the supervisor's inaction and [a] particular constitutional injury suffered by the plaintiff" from subordinate's actions) (internal quotation marks and citation omitted)

## III.

In conclusion, I will grant the defendants' motions to dismiss. The state law claims and the majority of the claims under § 1983 are time barred, and in any event, the Complaint fails to allege facts stating any deprivation of constitutional rights actionable under § 1983.

A separate Order will be entered herewith.

DATED:   September 21, 2016

/s/  James P. Jones
United States District Judge